**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Cory Bodette

    v.                           Case No. 15-cv-282-JL
                                     Opinion No. 2016 DNH 131
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), Cory Bodette moves for an order reversing the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.


**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without
remanding the cause for a rehearing.  The findings of
the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing

§ 405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'" Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917–18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

2

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement[1] is part of the court's record and will be summarized here, rather than repeated in full.  Moreover, the

---

[1] Document no. 12.

following summary focusses on those facts relevant to the disposition of the motions before the court.

Bodette last worked as a lot associate at Home Depot. Before that, he worked as a cashier at Walmart.  He left his job at Home Depot on June 13, 2012, which is the date on which he claims to have become disabled.  Two days before he stopped working, Bodette went to the doctor, complaining of syncope.[2]  He continues to have syncopal episodes, but doctors have been unable to determine the root cause.  About two weeks after he stopped working, Bodette applied for SSI and DIB benefits, claiming that he was disabled by syncope, migraine headaches, and depression.

On September 12, 2012, Bodette was seen by a psychologist, Dr. Cheryl Bildner, who performed a consultative examination.[3] In the Mental Health Evaluation Report that resulted from her examination, Dr. Bildner gave Bodette three relevant diagnoses:

---

[2] Syncope is a "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow." Stedman's Medical Dictionary 1887 (28th ed. 2006).

[3] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request." 20 C.F.R. §§ 404.1519 & 416.919.

(1) severe recurrent major depressive disorder with psychotic

features; (2) chronic posttraumatic stress disorder; and (3)

attention deficit hyperactivity disorder, by history.  Under the

heading "Content of Thought," Dr. Bildner noted:

> Claimant reported suicidal thoughts.  He reported
> having a firearm at home and thoughts of killing
> himself.  He denied any intent and reported that he
> "doesn't want anyone to have to clean up his mess."
> He contracted for safety and contracted to bring
> himself to the emergency room if he experienced
> suicidal thoughts.  He denied any plans to harm
> others.  He reported hearing voices and stated that
> the voices are critical in nature.  He also reported
> that [the voices tell] him to hurt himself but he
> "knows they are not real".  He reported experiencing
> flashbacks and nightmares of past abuse.  He denied
> experiencing obsessions or compulsions.  He reported
> that he experiences hypervigilant tendencies and
> experiences high anxiety including panic attacks and
> racing thoughts.  He checks to make sure doors are
> locked and windows are shut.  He was focused on his
> psychological symptoms and his physical health.

Tr. 551-52.

With respect to Bodette's level of functioning at the time

she examined him, Dr. Bildner offered the following opinions:

> Claimant is predominantly able to complete activities
> of daily living.
>
> . . . .
>
> Claimant is able to interact appropriately and
> communicate effectively with others.  Claimant
> maintained consistent employment for over four years.
>
> . . . .

5

Claimant is able to understand and recall
instructions.  No gross deficits were observed in
cognitive functioning.  He is able to recall
employment procedures as evidenced by his ability to
sustain long term employment.

. . . .

Claimant is able to maintain attention and
concentration when appropriately motivated.
Currently, he is enrolled in two online computer
courses which he is engaged in.  On the job, he has a
history of maintaining consistent attention and
concentration.  Concentration and task completion will
be interrupted during a syncope episode.

. . . .

Claimant is currently unable to manage stress
associated with a place of employment.  He is
preoccupied with physical health and feels "unsafe" to
go to work.  He has no motivation to report to work.
He reported that he is currently employed by Home
Depot.  He is not motivated to maintain a schedule.
He is able to interact appropriately with supervisors
and coworkers.  He is able to make simple decisions.

Tr. 553-54.

On September 13, 2012, a state-agency psychological

consultant, Dr. William Jamieson, conducted a Psychiatric Review

Technique ("PRT")[4] assessment based upon the record.  In his

---

[4] The Social Security Administration uses the "psychiatric
review technique" to evaluate the severity of mental
impairments.  See 20 C.F.R. §§ 404.1520a & 416.920a (describing
the PRT).

assessment, Dr. Jamieson considered two mental impairments,

affective disorders and anxiety-related disorders.  In his

consideration of the so-called paragraph B criteria of the

listings for those disorders, Dr. Jamieson determined that

Bodette had no restrictions on his activities of daily living,

no difficulties in maintaining social functioning, and mild

difficulties in maintaining concentration, persistence, or pace.

He also determined that Bodette had not had any episodes of

decompensation of extended duration.  Dr. Jamieson added this

explanation to his assessment:

> Source[s] [of evidence] [are] Cheryl Bildner, Ph.D.
> (Consultative examiner), White Mountain Community
> Health, [claimant's] function report and third party
> function report.  Most weight is given to Dr. Bildner
> with the exception of [claimant's] ability to handle
> stress in the work environment.  She opines that he
> has no motivation to report to work.  This does not
> appear to be related to any psychological impairment
> and therefore, this opinion is given little weight.

Tr. 79-80, 93-94.

In late September of 2012, Bodette went to the White

Mountain Community Health Center expressing suicidal ideation

and complaining of visual hallucinations.  He was transported to

the emergency room and from there, he was involuntarily

committed to New Hampshire Hospital ("NHH").  At NHH, he was

diagnosed with:  mood disorder, not otherwise specified; anxiety

7

disorder, not otherwise specified; rule out generalized anxiety disorder;[5] rule out posttraumatic stress disorder; and psychotic disorder, not otherwise specified.  NHH's characterization of the reason for Bodette's hospitalization includes this:

> He was reporting two weeks of command and derogatory hallucinations to harm himself and others.  He was having difficulty sleeping due to these voices being so bothersome.  He began to feel suicidal as a result of insomnia and auditory hallucination.

Tr. 556.  Bodette was released from NHH after a three-day stay.

In December of 2012, Bodette was awarded benefits from the State of New Hampshire's Aid to the Permanently and Totally Disabled ("APTD") program.  That award resulted from a finding by the New Hampshire Disability Determination Unit ("DDU"), that he suffered from a disabling psychotic disorder.  The records generated by the application process include a Psychiatric Review Template ("PRTemp") form completed by a physician.[6]  The

---

[5] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."  Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

[6] While that physician signed and/or initialed several pieces of paperwork, his signature is illegible and his name does not appear to be printed on any of the forms included in the record.

DDU's Psychiatric Review Template mirrors the Psychiatric Review Technique employed by the SSA, and refers directly to the listings of mental impairments set out in the Social Security regulations.

The author of PRTemp form considered one mental impairment, psychotic disorders.  In his or her consideration of the paragraph B criteria of the listing for that disorder, Listing 12.03, the author determined that Bodette had moderate restrictions on his activities of daily living, moderate difficulties in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence, or pace. The author of the PRTemp form also determined that Bodette had had one or two episodes of decompensation, each of extended duration.  Based upon the finding that Bodette had extreme difficulties in maintaining concentration, persistence, or pace, the author of the PRTemp form determined that Bodette's psychotic disorder met Listing 12.03.

After conducting a hearing on Bodette's claim, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

    3.  The claimant has the following severe impairment: syncope of unknown unknown etiology (20 CFR 404.1520(c) and 416.920(c)).

9

. . . .

4.  The claimant does not have an impairment or
combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

. . . .

5.  After careful consideration of the entire record,
the undersigned finds that the claimant has the
residual functional capacity to perform a full range
of work at all exertional levels but with the
following nonexertional limitations:  he is to avoid
hazards such as unprotected heights and machinery with
moving parts.

. . . .

6.  The claimant is capable of performing past
relevant work as a Cashier.  This work does not
require the performance of work-related activities
precluded by the claimant's residual functional
capacity (20 CFR 404.1565 and 416.965).

Tr. 22, 24, 25, 29.


**III. Discussion**

A. The Legal Framework

     To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible

for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether the ALJ correctly determined that Bodette was not under a disability from June 13, 2012, through December 10, 2013.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are:  1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

11

must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including:  (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Bodette's Claims

Bodette claims that the ALJ erred by: (1) failing to properly consider his obesity;[7] (2) failing to properly consider his mental impairments when determining his RFC; and (3) using lay knowledge to determine his RFC.  Bodette's second argument is persuasive, and dispositive; he is entitled to a remand because the ALJ failed to evaluate the medical opinion underlying the DDU's decision to award him APTD benefits.

The point of decision in this case lies at the confluence

---

[7] At his hearing, Bodette testified that he was six feet tall and weighed 418 pounds.

of two separate Social Security regulations and an error by the ALJ in characterizing the record before him.

The first of the two regulations applicable to Bodette's claim provides:

> A decision by any . . . other governmental agency about whether [a claimant is] disabled . . . is based on its rules and is not our decision about whether [the claimant] is disabled . . . .  We must make a disability . . . determination based on social security law.  Therefore, a determination made by another agency that [a claimant is] disabled . . . is not binding on us.

20 C.F.R. §§ 404.1504 & 416.904.[8]  The second pertinent regulation provides that "[r]egardless of its source, we [the Social Security Administration ("SSA") and, by extension, an ALJ] will evaluate every medical opinion we receive."  20 C.F.R. §§ 404.1527(c) & 416.927(c).

Turning to the interplay between those two rules, the order in Chapdelaine v. Colvin, No. 14-cv-30081-KAR, 2015 WL 1321480 (D. Mass. Mar. 23, 2015), is instructive.  In that case, the magistrate judge was confronted with a decision in which an ALJ:

---

[8] While decisions of other governmental agencies are not binding on the Social Security Administration, "an administrative law judge must explain the consideration given to such a determination."  Boyer v. Colvin, No. 1:15-cv-28-JHR, 2015 WL 6123525, at *2 (D. Me. Oct. 15, 2015) (citing Social Security Ruling 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006)).

(1) "stated . . . that he did 'not accept the [U.S. Department
of Veterans Affairs] decision of disabled, as such program does
not have the same criteria as [those] of the Social Security
Administration,'" id. *2; but (2) failed to fully consider the
evidence underlying that decision.  In his order remanding the
matter, the magistrate judge explained:

> [I]t is unclear from the decision what weight, if any,
> [the ALJ] gave to Ms. Britton's opinion or to the
> opinions of other medical sources from the [Veterans
> Affairs Medical Center].  Thus, while "merely ignoring
> an administrative conclusion [may not be] error per
> se," in this case, "it is more troubling [where]
> relevant evidence of disability [that] form[ed] the
> basis of the [VA] finding is in the record and [was
> seemingly] ignored." Dube v. Astrue, 781 F. Supp. 2d
> 27, 37 n.16 (D.N.H. 2011) (citing Bickford v.
> Barnhart, 242 F. Supp. 2d 39, 42 (D. Me. 2002) (error
> to ignore medical evidence in VA records)).

Id.; cf. Johnson v. Chater, 86 F.3d 1166, 1996 WL 270956, at *3
(10th Cir. 1996) (unpublished table decision) (stating that even
though a Dr. Tate "evaluated [claimant] for a worker's
compensation claim . . . [t]he ALJ could rely on Dr. Tate's
evaluation notwithstanding 20 C.F.R. § 404.1504, which provides
that findings of other agencies are not binding on the
[Commissioner]").[9]

---

[9] While it is not directly relevant to this case, the court
also notes that in Pelkey v. Barnhart, the court of appeals held
that an ALJ's failure to mention the VA's final conclusion on a

In his decision on Bodette's claim, the ALJ wrote:  "I give exhibit 10F little weight."  Tr. 28.  The problem is that the balance of the ALJ's discussion makes it clear that he regarded Exhibit 10F as being nothing more than the announcement of a decision, made by a registered nurse, on Bodette's application for APTD benefits.  However, Exhibit 10F also includes a Psychiatric Review Template form signed by a physician.  That form, in turn, memorializes a medical opinion on the severity of Bodette's psychotic disorder that includes specific findings on the paragraph B criteria for Listing 12.03.[10]  Yet, while the ALJ discounted the DDU's decision to award Bodette APTD benefits, he said nothing at all about the medical opinion underlying that decision.  That was an error.  See Chapdelaine, 2015 WL 1321480, at *2.

_____

disability claim did not entitle the claimant to a remand because the ALJ "fully considered the evidence underlying the VA's final conclusion," 433 F.3d 575, 579 (8th Cir. 2006).  If nothing else, Pelkey underscores the importance of evaluating the medical opinions underlying disability determinations by other governmental agencies.

[10] Indeed, the author of the PRTemp form determined that Bodette had extreme difficulties in maintaining concentration, persistence, or pace.  According to the Social Security regulations, such difficulties represent "a degree of limitation that is incompatible with the ability to do any gainful activity."  20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4).

In so ruling, the court is mindful that in Johnson v. Colvin, Judge Hornby adopted a report and recommendation in which the magistrate judge determined that the ALJ had committed at most a harmless error by failing to address a physician's opinion that supported an award of disability benefits from the VA, see No. 1:13-cv-406-DBH, 2014 WL 5394954, at *3 (D. Me. Oct. 21, 2014). But in Johnson, the opinion at issue was a bare conclusion that the claimant could not work, "a matter that is reserved to the commissioner." Id. Here, by contrast, the opinion the ALJ ignored was expressed in precisely the format described by the SSA in 20 C.F.R. §§ 404.1520a(c) and 416.920(c). Thus, Johnson does not counsel in favor of affirming the ALJ in this case.

Having identified an error by the ALJ that requires a remand, the court need say no more, but there is one final point that may bear mentioning. The thrust of 20 C.F.R. §§ 404.1504 and 416.904 is that the SSA is not bound by disability determinations made by agencies that use rules that are different from those employed by the SSA. That concern was echoed by the ALJ in Chapdelaine, who pointed out that the Veterans Affairs disability "program does not have the same criteria as [those] of the Social Security Administration," 2015

WL 1321480, at *2.  Here, however, the opinion the ALJ ignored
was expressed on a form that uses the exact same format as the
opinion by Dr. Jamieson to which the ALJ gave great weight.

     In light of the similarities between the SSA's Psychiatric
Review Technique (employed by Dr. Jamieson) and the New
Hampshire DDU's Psychiatric Review Template (completed by the
physician with the illegible signature) it would seem difficult
to characterize the SSA disability program and the APTD
disability program as having different criteria, or as being, as
the ALJ said in his decision, "distinct . . . separate and
unrelated," Tr. 28.  Rather, at least with regard to determining
the severity of mental impairments, it would appear that a
determination by the New Hampshire DDU is based on rules that
are all but identical to those used by the SSA, which would seem
to obviate the concern that is addressed by 20 C.F.R. §§
404.1504 and 416.904.  That said, whether or not the congruence
between the SSA's PRT and the DDU's PRTemp require an ALJ to
give substantial weight to determinations such as the one made
by the New Hampshire DDU in this case is a question for another
day.

     The bottom line is this.  The ALJ did not necessarily err
in his determination of the amount of weight to give the DDU's

decision to award Bodette APTD benefits.  The error that
requires a remand is the ALJ's failure to evaluate, or even
acknowledge, the opinion of the physician who completed the
Psychiatric Review Template form on which the decision to award
APTD benefits was based.

**IV. Conclusion**

       For the reasons detailed above, the Acting Commissioner's
motion for an order affirming her decision[11] is denied, and
Bodette's motion to reverse that decision[12] is granted to the
extent that this matter is remanded to the Acting Commissioner
for further proceedings, pursuant to sentence four of 42 U.S.C.
§ 405(g).  The clerk of the court shall enter judgment in
accordance with this order and close the case.

        **SO ORDERED.**

                                 _____
                                 Joseph Laplante
                                 United States District Judge

Dated:  August 9, 2016

cc:   Laurie Smith Young, Esq.
      Robert J. Rabuck, AUSA

_____

[11] Document no. 9.

[12] Document no. 11.